UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

UNITED STATES OF AMERICA,

                                                REPORT AND
                                                RECOMMENDATION
                                                06-CR-6037

v.

JULIUS WILLIAMS-BETHAL,

      Defendant.
───────────────────────────────

**Preliminary Statement**

Currently before the Court are motions by defendant Julius Williams-Bethal to suppress statements he made to the police after being arrested on September 14, 2005. (Docket #50/52). The Government filed papers in opposition to the motions. (Docket #51/55). A suppression hearing was held on April 10, 2007. By Order of Judge David G. Larimer, dated March 13, 2006, all pretrial motions have been referred to this Court pursuant to 28 U.S.C. §636(b)(1)(A)-(B). (Docket #4). The following is my Report and Recommendation as to the defendant's suppression motions.

**Factual Background**

The testimony adduced at the suppression hearing revealed that during the evening of September 14, 2005, Rochester Police Officer Laslow Tordai was assigned to an emergency task force designed to address the "increasing violence on both the city's east and west side." See Transcript of April 10, 2007 Suppression Hearing

[hereinafter "T"] at 5 (Docket #57). Officer Tordai was familiar with the high criminal activity in the area and testified that he had participated in raids of drug houses there and knew that the police department frequently received calls to respond to the area for reports of gunshots fired, robberies and barricaded gunmen. T at 9.

That night, Officer Tordai's team received a call that undercover officers were watching two men standing in the driveway of 11 Morrill Street, one of whom had a gun. T at 6, 10. Officer Tordai's team consisted of a caravan of three vehicles and approximately ten officers. T at 11, 20. Officer Tordai was dressed in a police department issued "battle dress" uniform which was black but had patches identifying him as a police officer. T at 12.

When the officers arrived at the location, they saw two men running from the driveway of 11 Morrill Street, eastbound down the street and observed one of them (later identified as co-defendant Johnny Paige) throw an object over a fence. T at 6, 11, 21-23. The vehicle Officer Tordai was riding in pursued Williams-Bethal and the driver announced "stop, police" but the defendant continued to flee. T at 12, 26. During the pursuit, Officer Tordai heard a "cracking sound in the glass" behind his head and realized that someone was shooting at the vehicle. T at 13, 23-25. The officers disembarked from the vehicle and chased after Williams-Bethal on foot. T at 6,

13. During the chase, Officer Tordai radioed the police dispatcher as to what was transpiring, but the other officers yelled "stop, police." T at 13. Williams-Bethal ignored them and continued up a driveway and over a fence where the officers caught up with him. T at 14. Williams-Bethal was brought to the ground and Officer Tordai assisted in handcuffing him. Id.

While Williams-Bethal was being handcuffed, one of the officers assisting in the arrest said: "Why were they shooting at us?" T at 14, 25. According to Officer Tordai, this question was not directed to Williams-Bethal, but to the other officers. Tordai testified, "no one was addressing [the defendant]. We were in the process of handcuffing him, we did not look at him or address him personally, it was just people were wondering under the stressful situation of why we were being shot at." T at 15. Immediately after the officer asked the question, Williams-Bethal said "we were just robbed." T at 16, 26.

After his arrest, the defendant was transported to the Public Safety Building and placed in an interview room. Investigator Nicholas Mazzola and Investigator Giudici, met with him at approximately 1:02 a.m. T at 28-29. After identifying themselves, Investigator Mazzola read Williams-Bethal his Miranda warnings "verbatim" from an RPD issued rights card. T at 31. After his rights were read, the defendant was asked whether he understoon his rights and whether he agreed to speak to the officers. The

defendant answered both questions in the affirmative. T at 32-33, 41; see also Government's Exhibit 1. After agreeing to be interviewed, the defendant told the officers that he did not have a gun that evening and had no information about the shooting. T at 42, 47. According to the defendant, he was only in possession of a small bag of marijuana which he threw down when he saw the police approach. T at 42, 48. Defendant told the officers that he ran when he saw them approach because he does not like the police. T at 48. Investigator Mazzola ended the interview when Williams-Bethal said he was tired and did not want to talk anymore. T at 35.

### Discussion

1. Motion to Suppress Pre-Miranda Statement: Both counsel agree that the defendant's pre-Miranda statement about being robbed was made while he was being placed in custody and thus must be analyzed pursuant to Rhode Island v. Innis, 446 U.S. 291 (1980). In Innis, the Supreme Court held that interrogation includes not only direct questioning, but any words or actions on the part of officers that are reasonably likely to elicit an incriminating response. At issue in Innis was a conversation between two police officers in the presence of the arrested defendant regarding the dangerousness of a missing gun in an area where children played. The conversation evoked a spontaneous statement from the defendant about the location of the gun. The Court held that the officers did not violate

4

Miranda because their conversation "included no express questioning" of the defendant and was, "at least in form, nothing more than a dialogue between the two officers to which no response from the respondent was invited." Id. According to the Court, the issue

> boils down to whether, in the context of a brief conversation, the officers should have known that the respondent would suddenly be moved to make a self-incriminating response. Given the fact that the entire conversation appears to have consisted of no more than a few off hand remarks, we cannot say that the officers should have known that it was reasonably likely that Innis would so respond. This is not a case where the police carried on a lengthy harangue in the presence of the suspect. Nor does the record support the respondent's contention that, under the circumstances, the officers' comments were particularly "evocative." It is our view, therefore, that the respondent was not subjected by the police to words or actions that the police should have known were reasonably likely to elicit an incriminating response from him.

Innis, 446 U.S. at 303. Thus, a volunteered or spontaneous statement, even if incriminating, is not barred by the Fifth Amendment nor obtained in violation of Miranda. United States v. Ortiz, 2007 WL 925731, *7 (W.D.N.Y. March 26, 2007).

Here, I find that the oral statement Williams-Bethal made prior to being given Miranda warnings was spontaneous and not in response to any interrogation by law enforcement. See Innis, 446 U.S. at 300 (volunteered statements are admissible in evidence and are not subject to Miranda safeguards). Although it is clear that the defendant was in custody at the time he made the statement "we were

5

just robbed," it is also clear that the officer's question preceding defendant's statement was in the context of having just completed a potentially deadly chase in which shots were fired. Given the circumstances, I do not believe one officer asking another if he knew why the suspects were shooting at them was intended to extract an incriminating disclosure from the defendant. See United States v. McFarland, 424 F.Supp.2d 427, 444 (N.D.N.Y. 2006)(statements and questions by law enforcement do "not constitute interrogation [if] there was no investigative intent"), citing United States v. Rodriguez, 356 F.3d 254, 259 (2d Cir. 2004). See also United States v. Marks, 407 F.Supp.2d 452, 454 (W.D.N.Y. 2006)(court found defendant's statements in following colloquy to be spontaneous: defendant asked officer why they were always bothering him; officer responded that it could be because of his reputation to which defendant responded "it's probably because I deal drugs"); United States v. Torres, 2002 WL 72929, *7 (S.D.N.Y. Jan. 17, 2002)(where officer found large sum of money and then looked up at defendant, court found defendant's incriminating statement was spontaneous because the officer did not ask the defendant any questions).

Based on the foregoing, it is my Report and Recommendation that defendant's motions to suppress his pre-Miranda statement be denied.

2. Motion to Suppress Post-Miranda Statements: With regard to Williams-Bethal's post-arrest statements, the undisputed testimony at the hearing confirmed that Miranda warnings were given before the

6

police questioned him, that he understood these warnings, voluntarily waived them and never requested an attorney. There is no evidence that the officers threatened the defendant, used physical force or psychological coercion, or made any promises in order to induce him to speak. Moreover, at no time did the defendant request counsel and the officers terminated the questioning when the defendant announced he was tired and no longer wanted to talk. For these reasons, it is my Report and Recommendation that the officers complied with Miranda and the defendant's post-arrest statements should be deemed admissible. See Nova v. Bartlett, 211 F.3d 705, 708 (2d Cir. 2000)(confession made post-Miranda admissible at trial).

## Conclusion

For the foregoing reasons, it is my Report and Recommendation that Julius Williams-Bethal's motions to suppress be **denied**.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: July 2, 2007
Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R. Civ.P. 72(b) and Local Rule 72.3(a)(3).[1]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See e.g. Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Government and the Defendant.
    **SO ORDERED.**

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated: July 2, 2007
Rochester, New York

---

[1] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. §3161(h)(1)(f) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).